IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AMPARO MARTINEZ, §
 §
    Plaintiff-counterdefendant, §
 § Civil Action No. 3:16-CV-3043-D
VS. §
 §
PILGRIM'S PRIDE CORPORATION, §
 §
    Defendant-counterplaintiff. §

MEMORANDUM OPINION
AND ORDER

In this lawsuit arising from injuries that plaintiff-counterdefendant Amparo Martinez ("Martinez") sustained while working at defendant-counterplaintiff Pilgrim's Pride Corporation's ("Pilgrim's Pride's") chicken processing facility, the court must determine whether Martinez is bound by the terms of a Partner Protection Plan Agreement ("Protection Agreement") that waived her right to bring a lawsuit for damages relating to the incident in exchange for enhanced medical coverage and wage replacement benefits. Concluding that she is, the court grants Pilgrim's Pride's motion for summary judgment on its breach of contract counterclaim and dismisses this lawsuit with prejudice by judgment filed today.

I

Pilgrim's Pride, a non-subscriber to the Texas Worker's Compensation system, maintains the Pilgrim's Pride Corporation Partner Protection Plan ("Plan"),[1] an ERISA[2]-

---

[1] In deciding Pilgrim's Pride's summary judgment motion, the court views the evidence in the light most favorable to Martinez as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*,

governed employee benefits plan. Under the Plan, all covered employees are entitled to "Basic Benefits," which provides for the payment of a certain amount of medical expenses and wage replacement benefits. After a workplace incident, employees are provided with the opportunity to select "Premium Benefits," which provides additional medical coverage and wage replacement benefits in exchange for a full waiver and release relating to the workplace incident. Appendix B to the Plan—the Protection Agreement—provides for the election between Basic and Premium Benefits. Under the rubric "OPPORTUNITY FOR INCREASED BENEFITS — Waiver and Release," D. App. 69 (bold font omitted), in bold font and within a textual box, the Protection Agreement states, in pertinent part:

> <u>If I have indicated below that I choose "Premium Benefits" under the Plan</u>, then I understand and agree that I release and forever waive my rights under all statutes and common law to bring a lawsuit or other action against Pilgrim's and/or its officers, directors, owners, employees, representatives, agents, subsidiaries, affiliates, successors, or assigns, for any and all damages, death or other harm relating to the Incident. I AGREE THAT THIS WAIVER AND RELEASE WILL APPLY EVEN WHERE THE ONLY CAUSE OR A CONTRIBUTING CAUSE OF ANY SUCH INJURY WAS AN ACT OF NEGLIGENCE, GROSS NEGLIGENCE AND/OR NEGLIGENT FAILURE TO ACT BY PILGRIM'S OR OTHER ABOVE-NAMED PARTIES. My only remedy will be the Premium Benefits that I am eligible to receive under the Plan.

*Id.* (bold font omitted).

---

541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

Martinez was employed as a processor at Pilgrim's Pride's chicken-processing facility in Nacogdoches, Texas when on December 6, 2014 she slipped and fell while walking across the Pilgrim's Pride processing floor, shattering her left femur. Martinez was admitted to the Nacogdoches Memorial Hospital ("Memorial") the following day, and on December 8, 2014 underwent an open reduction and internal fixation surgery. After her surgery, Martinez was admitted to Memorial's rehabilitation facility, where she remained until her discharge on January 9, 2015.

After Martinez's surgery, Debra K. Frazier, LVN ("Frazier"), a licensed vocational nurse employed by Pilgrim's Pride as an Occupational Health Manager for its Nacogdoches facility, traveled to Memorial to meet with Martinez on at least three occasions.[3] Martinez and Pilgrim's Pride dispute what Frazier and Martinez discussed during these visits. It is undisputed, however, that on December 29, 2014 Martinez signed the signature page of the Protection Agreement, indicating that she was choosing eligibility for Premium Benefits under the Plan.

Pursuant to her election under the Protection Agreement, Martinez received a total of 67 full weeks and one partial week of wage replacement benefits at $418.88 per week, through April 4, 2016. On October 31, 2016 she brought this lawsuit against Pilgrim's Pride.

---

[3]Martinez maintains that Frazier met with her on three occasions following her injury and surgery: on December 18, 2014, December 23, 2014, and December 29, 2014. Pilgrim's Pride contends that Frazier visited Martinez on December 9, 2014, December 18, 2014, December 23, 2014, December 29, 2014, and December 31, 2014, and that Frazier accompanied Martinez to numerous additional inpatient and outpatient medical appointments between January 7, 2015 and May 3, 2016.

In her second amended complaint, Martinez alleges claims for non-subscriber negligence and for a declaration "determining asserted affirmative defenses of release, waiver, and election of remedies." 2d Am. Compl. ¶ 5.10. Pilgrim's Pride counterclaims for breach of contract, alleging, *inter alia*, that it fully performed its obligations to provide Premium Benefits under the terms of the Protection Agreement, and that, by filing suit and making a jury demand, Martinez breached her agreement with Pilgrim's Pride. In connection with its counterclaim, Pilgrim's Pride seeks, *inter alia*, "specific performance in the form of enforcement of the [Protection Agreement] to dismiss Plaintiff's claims with prejudice as a matter of law[.]" Am. Counterclaim ¶ 11. Pilgrim's Pride now moves for summary judgment on Martinez's declaratory judgment claim and on its breach of contract counterclaim and seeks enforcement of the Plan through a dismissal of Martinez's lawsuit with prejudice. Martinez opposes the motion.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof

as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim for which a party will have the burden of proof at trial, the party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) ( Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Pilgrim's Pride contends that the Protection Agreement is a "settlement agreement between the parties which covers the legal dispute at issue in this case," D. Br. 1, and it seeks to enforce the Protection Agreement through its breach of contract counterclaim seeking specific performance (i.e., dismissal of Martinez's lawsuit with prejudice).

A

The elements of a claim for breach of contract under Texas law[4] are "(1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant['s] breach of the contract, and (4) damages to plaintiff resulting from the breach." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.) (citation omitted), *aff'd sub nom. Motion Med. Techs., L.L.C. v. ThermoTek, Inc.*, 875 F.3d 765 (5th Cir. 2017). Pilgrim's Pride maintains that it is entitled to prevail as a matter of law on its breach of contract counterclaim because the undisputed facts "establish that the [Protection Agreement] is a valid contract, that Defendant performed by paying the Premium Benefits, that Plaintiff breached by filing her negligence cause of action, and that Defendant was damaged due to the loss of consideration paid." D. Br. 15.

Martinez responds that, to prevail on its motion for summary judgment, Pilgrim's Pride bears the burden of "conclusively establishing as a matter of law that (1) the *third* page of [the Protection Agreement] (the releasing instrument) mentions the claim being released, and (2) that Pilgrim's Pride and Ms. Martinez had a meeting of the minds on the effects of the proffered release." P. Br. 10 (bold font omitted). Martinez contends that Pilgrim's Pride cannot meet its heavy burden because the releasing instrument (here, the signature page of the Protection Agreement) does not mention the release of any claims, and there is a fact issue regarding whether she reviewed the first two pages of the Protection Agreement and

---

[4]The parties agree that Texas law applies to Pilgrim's Pride's breach of contract counterclaim.

whether Pilgrim's Pride explained to her that, by electing Premium Benefits, she was releasing her non-subscriber negligence claims.

Pilgrim's Pride contends in its reply that Martinez has the burden to establish some means to avoid the clear terms of the release signed by both parties; that to the extent Martinez now contends that there was no meeting of the minds, she has never pleaded this affirmative defense; that even if she had pleaded this defense, she has not created a fact issue regarding a meeting of the minds because it is undisputed that she was provided the full terms of the Protection Agreement and had ample time to review it, and her failure to read a contract is not a defense under Texas law; and that, to the extent Martinez argues that her being on pain medication for part of the time she had to review the contract before signing it shows a failure of the meeting of the minds, the undisputed evidence shows that no pain medication was administered on December 29, 2014 (the day Frazier received the signature page from Martinez), no pain medication was administered on December 22, 2014 or December 25-27, 2014, and no pain medication was administered on December 30, 2014 through January 1, 2015 (the three-day revocation period provided for in the Protection Agreement).

B

As noted, the existence of a valid, binding contract is one of the essential elements of a breach-of-contract claim. *See Orthoflex, Inc.*, 983 F.Supp.2d at 872. "For there to be a valid contract, there must be '(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the

intent that it be mutual and binding.'" *Erdman Co. v. USMD of Arlington GP, LLC*, 2011 WL 1356920, at *15 (N.D. Tex. Apr. 11, 2011) (Fitzwater, C.J.) (quoting *Prime Prods. v. S.S.I. Plastics*, 97 S.W.3d 631, 636 (Tex. App. 2002, pet. denied)). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App. 1999, pet. denied)). "[A] meeting of the minds refers to a mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. Appx. 348, 362 (5th Cir. 2013) (per curiam) (citing *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App. 2010, pet. denied)). "The essential terms must be defined 'with sufficient precision to enable the court to determine the obligations of the parties.'" *Id.* (quoting *New Process Steel, L.P. v. Sharp Freight Sys.*, 2006 WL 947764, at *3 (Tex. App. Apr. 13, 2006, no pet.)).

The undisputed summary judgment evidence establishes as a matter of law that there was a meeting of the minds with respect to the waiver and release provision of the Protection Agreement. The Protection Agreement clearly and unambiguously states that, by choosing "Premium Benefits" under the Plan, an employee understands that she is "releas[ing] and forever waiv[ing] [her] rights under all statutes and common law to bring a lawsuit or other action against Pilgrim's [Pride] . . . for any and all damages, death or other harm relating to the Incident." D. App. 69 (bold font omitted). On the signature page, an employee choosing "Premium Benefits" must initial this statement: "I choose eligibility for Premium Benefits

under the Plan, *and agree to the above "Opportunity for Increased Benefits – Waiver and Release."* *Id.* at 71 (bold font omitted, emphasis added). The entire Protection Agreement is only three pages, including the signature page, and the "OPPORTUNITY FOR INCREASED BENEFITS — Waiver and Release" section is in bold font and within a textual box for emphasis. Pilgrim's Pride has presented undisputed evidence that the entire Protection Agreement is attached at Appendix B to the Plan's Summary Plan Description ("SPD"), and that on August 8, 2010 Martinez signed an acknowledgment that she had received the SPD. Moreover, Martinez admitted during her deposition that a copy of the SPD was left with her at the hospital, that the SPD contained the full three-page Protection Agreement, and that she signed the third page of that document, indicating that she was choosing Premium Benefits and agreeing to the waiver and release provision.

In her response brief, Martinez maintains that

> [w]hile contracts are generally construed as a whole, the evidence in this case creates material fact issues as to whether Ms. Martinez ever reviewed the first two pages of Appendix B (which actually outline what is being released) or whether Pilgrim's Pride ever explained to Ms. Martinez what (that is, her non-subscriber negligence claims) were actually being released.

P. Br. 10. In essence, Martinez appears to argue that, because she did not review the first two pages of the Protection Agreement or understand precisely what she was waiving when she elected Premium Benefits,[5] the required meeting of the minds for formation of a contract was

---

[5]Although Martinez concedes that the narcotic pain medication she was taking around the time she signed the Protection Agreement did not incapacitate her to the point of rendering her incapable of exercising judgment or understanding the nature of the agreement

-9-

absent. As explained above, however, the determination whether a contract has been formed is not based on the parties' subjective state of mind. Rather, "[t]he determination of a meeting of the minds . . . is based on the *objective* standard of what the parties said and did and not on their subjective state of mind." *In re Capco Energy, Inc.*, 669 F.3d at 280 (emphasis added); *see also* 1 Williston on Contracts, § 4:1 (4th ed.) ("the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract."). Moreover, Texas courts have repeatedly held that "a party is bound by the terms of the contract [s]he signed, regardless of whether [s]he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)); *see also Am. Nat'l Ins. Co. v. Paul*, 927 S.W.2d 239, 244 (Tex. App. 1996, writ denied) (rejecting argument that plaintiffs' "failure to read the contract evidenced a lack of a meeting of the minds because they could not have assented to terms of which they were unaware" because the "determination of whether there was a meeting of the minds must be based on objective standards[.]" (citation omitted)). Neither Martinez's "affirmative[] testi[mony]" that there was no meeting of the minds, P. Br. 11, nor her alleged failure to read

---

or the consequences of its execution, she contends that the fact that she was in the hospital, on narcotic pain medication post-surgery, when Pilgrim's Pride presented her with the signature page "provides additional evidence precluding a meeting of the minds as to what, exactly, Pilgrim's Pride requested [her] to release." P. Br. 13. The court disagrees, for the reasons explained here. The court focuses only on whether, objectively, there was a meeting of the minds. Martinez's subjective understanding of what she was releasing is immaterial to the question whether the Protection Agreement constitutes a valid, enforceable contract.

or understand precisely what claims she was releasing undermine the clear and objective evidence, found in the Protection Agreement itself, that there was a meeting of the minds.

Accordingly, the court concludes that Pilgrim's Pride has established beyond peradventure that there was a meeting of the minds with respect to the Protection Agreement and, specifically, the waiver and release provision.

C

Under Texas law, "[a] release, valid on its face, is a complete bar to any later action based upon matters covered in the release unless the release is set aside." *DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 6693192, at *21 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) (quoting *Westfield Dev., Inc. v. Rubashkin*, 2007 WL 491115, at *2 (Tex. App. Feb. 15, 2007, no pet.) (mem. op.)). Only when a release is set aside does it become ineffective. In the summary judgment context, once a release is properly pleaded, the burden shifts to the other party to offer proof that the release should be set aside. *See McMahan v. Greenwood*, 108 S.W.3d 467, 478 (Tex. App. 2003, pet. denied); *see also Sweeney v. Taco Bell, Inc.*, 824 S.W.2d 289, 291 (Tex. App. 1992, writ denied).

In her brief, Martinez appears to contend that the release provision of the Protection Agreement should be set aside because the signature page "does not mention any claims that are being released." P. Br. 11. She posits that, "[t]o release a claim effectively, the releasing instrument must 'mention' the claim to be released." *Id.* at 10 (emphasis omitted). The court rejects with this contention for several reasons.

First, as explained above, the signature page clearly references the "OPPORTUNITY

FOR INCREASED BENEFITS — Waiver and Release," which can be found inside a textual box for emphasis on page one of the three-page Protection Agreement.

Second, the "OPPORTUNITY FOR INCREASED BENEFITS — Waiver and Release" provision itself states, in clear and unambiguous terms:

> If I have indicated below that I choose "Premium Benefits" under the Plan, then I understand and agree that I release and forever waive my rights under all statutes and common law to bring a lawsuit or other action against Pilgrim's [Pride] . . . for any and all damages, death or other harm relating to the Incident.

D. App. 69 (bold font omitted).

Third, "[a]s a general rule, a written release cannot be avoided on the ground that the releasor was ignorant of, or mistaken about, the contents of the release, or failed to read it before signing." *Sweeney*, 824 S.W.2d at 291.

Fourth, although "[f]raud, mutual mistake, and lack of consideration are all affirmative defenses for the enforceability of a release," *id.* (citing *Tobbon v. State Farm Mut. Auto. Ins. Co.*, 616 S.W.2d 243, 245 (Tex. Civ. App. 1981, writ ref'd n.r.e.), Martinez has neither pleaded[6] any of these affirmative defenses nor argued in her response that any of these affirmative defenses would prevent Pilgrim's Pride from enforcing the release in this case.

D

Pilgrim's Pride has established beyond peradventure that the Protection Agreement is an enforceable contract. It has also established beyond peradventure that it performed its

---

[6]Martinez has not filed an answer to Pilgrim's Pride's amended counterclaim.

obligations under the Protection Agreement by providing Martinez Premium Benefits, which included, *inter alia*, 67 full weeks and one partial week of wage replacement benefits at $418.88 per week; that filing this lawsuit constitutes a breach of the waiver and release provision included in the Protection Agreement; and that Pilgrim's Pride has been damaged as a result.[7] Martinez has failed to plead or create a genuine issue of material fact on any affirmative defense to Pilgrim's Pride's breach of contract counterclaim. Accordingly, the court grants Pilgrim's Pride's motion for summary judgment on its breach of contract counterclaim.[8]

IV

Pilgrim's Pride seeks "enforcement of the [Protection Agreement] through a dismissal of Plaintiff's lawsuit with prejudice," and it "represents that in the event this Motion is granted, it will not pursue any damages for breach of contract, resulting in a full resolution of this legal dispute." D. Br. 2. Under Texas law, "[s]pecific performance is an equitable remedy that may be awarded at the trial court's discretion upon a showing of breach of contract." *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.

---

[7] Martinez does not dispute that Pilgrim's Pride performed its obligations under the Protection Agreement, that filing this lawsuit constitutes a breach of the Protection Agreement, or that Pilgrim's Pride has been damaged.

[8] Because the court is granting Pilgrim's Pride's motion for summary judgment on its breach of contract counterclaim and awarding specific performance in the form of dismissal of Martinez's lawsuit, the court does not address the other arguments in Pilgrim's Pride's motion for summary judgment, including those directed at Martinez's declaratory judgment claim.

2008, pet. denied) (citing *Kress v. Soules*, 261 S.W.2d 703, 704 (Tex. 1953); *Bell v. Rudd*, 191 S.W.2d 841, 843 (Tex. 1946); *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App. 2007, pet. denied)).

Although Martinez generally opposes Pilgrim's Pride's motion for summary judgment, she does not specifically respond to Pilgrim's Pride's request that her lawsuit be dismissed or provide the court with any basis for denying Pilgrim's Pride's request. Because Pilgrim's Pride has established beyond peradventure that by signing the Protection Agreement, Martinez waived and released her right to bring a lawsuit against Pilgrim's Pride for any damages or harm relating to the December 6, 2014 incident at the Pilgrim's Pride's Nacogdoches, Texas facility, and that, by filing the instant lawsuit, Martinez has breached the Protection Agreement, the court grants the specific performance that Pilgrim's Pride requests as a remedy for Martinez's breach of contract.

\* \* \*

Accordingly, for the reasons explained, the court grants Pilgrim's Pride's motion for summary judgment on its breach of contract counterclaim and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

December 13, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE